**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JANICE D. H.,[1]

              Plaintiff,

    v.

ANDREW M. SAUL,

              Defendant.

Case No.  CV 18-08010-RAO

**MEMORANDUM OPINION AND ORDER**

## I.   INTRODUCTION

Plaintiff Janice D. H. ("Plaintiff") challenges the Commissioner's denial of her application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI").  For the reasons stated below, the decision of the Commissioner is REVERSED, and the matter is REMANDED.

## II.   PROCEEDINGS BELOW

On January 21, 2015, Plaintiff filed a Title II application for DIB alleging disability beginning on December 5, 2014.  (Administrative Record ("AR") 307-08.)

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

One day later, Plaintiff filed an application for SSI alleging disability beginning on December 5, 2014. (AR 309-314.) Plaintiff's claims were denied on June 2, 2015. (AR 143-47.) Plaintiff filed a request for reconsideration on June 17, 2015, which was denied on August 14, 2015. (AR 147, 150.) On August 17, 2015, Plaintiff filed a written request for hearing, and a hearing was held on July 18, 2017. (AR 62-76, 156.) Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert. (AR 62-76.) On August 16, 2017, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[2] from December 5, 2014 through August 16, 2017, the date of the ALJ's decision. (AR 36-37.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on July 18, 2018. (AR 1.) Plaintiff filed this action on September 14, 2018. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *See Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 5, 2014, the alleged onset date ("AOD"). (AR 26.) At **step two**, the ALJ found that Plaintiff had the following severe impairments: multiple sclerosis; myoligamentous strain of the cervical spine, lumbosacral spine, right shoulder, left shoulder, and bilateral knees; depression; and anxiety. (AR 26-27.) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 27.)

///

///

---

[2] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform light work . . . except she can stand and/or walk for 6 hours in an 8 hour workday; sit for 6 hours in an 8-hour workday; occasionally climb, balance, stoop, kneel, crouch, crawl; occasionally reach[ ] in all directions with her left arm; can understand and remember tasks; can sustain concentration and persistence; can socially interact with the general public, co-workers, and supervisors; and, can adapt to workplace changes frequently enough to perform unskilled, low stress jobs that require simple instructions.

(AR 29.)   At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff was unable to perform any past relevant work. (AR 35.)   At **step five**, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*)   Accordingly, the ALJ determined that Plaintiff had not been under a disability from the AOD through the date of decision.  (AR 35-37.)

III.   <u>STANDARD OF REVIEW</u>

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).  An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence.  Rather, a court must consider the record

as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

**IV.  DISCUSSION**

Plaintiff raises the following issues for review: (1) whether new and material evidence submitted to the Appeals Council renders the ALJ's decision no longer supported by substantial evidence; and (2) whether the ALJ properly evaluated Plaintiff's subjective complaints. (*See* Plaintiff's Memorandum in Support of the Complaint ("Pl's Mem.") 5, 8.) For the reasons below, the Court reverses and remands.

**A.  The ALJ Properly Evaluated Plaintiff's Subjective Complaints[3]**

Plaintiff argues that the ALJ failed to properly consider Plaintiff's subjective testimony. (Pl's Mem. 8-10; Plaintiff's Reply ("Pl's Reply") 3-4.) The Commissioner disagrees. (Defendant's Memorandum in Support of Defendant's Answer ("Def's Mem.") 4-11.)

///

///

---

[3] Because subjective symptom testimony is one factor that the ALJ must consider when assessing a claimant's RFC, before proceeding to steps four and five of the five-step sequential process, the Court addresses this issue first.

4

### 1.    Plaintiff's Administrative Hearing Testimony

Plaintiff testified that she has a tenth-grade education.  (AR 65.)  She is living with her daughter.  (AR 72.)  She receives 74 hours per month of in-home support services.  (AR 73.)  The in-home support care provider helps Plaintiff with bathing, combing hair, doing laundry, and going to the market.  (AR 72-73.)  Plaintiff does not go to the market.  (*Id.*)  Plaintiff will wash dishes "once in a while" but will take a break if there are too many dishes.  (AR 72.)  She watches television.  (*Id.*)  Plaintiff also attends her doctors' appointments.  (*Id.*)

Plaintiff testified that she cannot sit, stand, or walk for long periods of time and has limited use of her arms.  (AR 66.)  Plaintiff was prescribed a walker and has been using the walker for the past two years.  (*Id.*)  She attended the hearing with the walker.  (*Id.*)

Plaintiff suffers from pain in her mid and lower back.  (AR 67.)  On a good day, Plaintiff would be able to sit in a chair for 10 or 15 minutes before having to get up.  (AR 67, 71.)  Similarly, a good day would mean that Plaintiff is able to walk without her walker for 15 to 20 minutes.  (*Id.*)  She would only be able to stand for 15 to 20 minutes without her walker.  (*Id.*)  Plaintiff testified that she would be unable to stand or walk for longer periods of time with the use of the walker.  (*Id.*)

Plaintiff testified that she has back pain which causes pain to shoot down her right leg.  (AR 67.)  Her right leg "stays swollen as well."  (*Id.*)  Plaintiff is unable to balance on either foot.  (*Id.*)  She cannot use stairs or ladders.  (AR 68.)  She is not able to kneel and stand back up.  (*Id.*)  Plaintiff also has pain in her left leg.  (AR 70.)  She cannot use her feet to step on controls like pedals or clutches without being in severe pain.  (*Id.*)

As to her arms, Plaintiff testified that she cannot reach over her head with her left arm, but she is able to reach forward with her left arm.  (AR 68.)  Plaintiff can lift a total of four pounds using both arms.  (AR 69.)  Plaintiff was prescribed Norco to help manage her pain.  (AR 72.)  In addition, Plaintiff was referred to physical

therapy on three occasions. (*Id.*) Plaintiff also uses a heat pad for pain relief. (*Id.*)

Plaintiff also suffers from anxiety and depression. (AR 69.) Plaintiff testified that she has "crying spells," where she just cries because she feels useless. (*Id.*) The crying spells can last two seconds, or they can last all day. (*Id.*) She has medication that she takes for body pain and mental health, however, the medication has side effects of drowsiness, dizziness, and diarrhea. (AR 70.)

### 2. Plaintiff's Function Report

Plaintiff submitted a Function Report in February 2015. (AR 385-93.) Plaintiff explained that she cannot sit up for longer than 10 minutes without experiencing pain or discomfort. (AR 385.) Plaintiff experiences high blood pressure when she stands up, causing her head to hurt. (*Id.*) She is unable to lift her arm. (*Id.*) Plaintiff also noted that her "legs give out" causing her to fall. (*Id.*) Lastly, Plaintiff states that she has cancer which causes her to be tired and makes it difficult for her to breathe when she is walking. (*Id.*)

On the days that Plaintiff is able to get out of bed, she cooks, goes to the store, cleans, and showers. (AR 386.) Plaintiff can feed herself. (*Id.*) On the days that she can cook she will make sandwiches, complete meals, or will heat up a frozen dinner. (AR 387.) Plaintiff sometimes experiences difficulty lifting her leg to put on pants, lifting her arms to comb her hair, and getting in and out of the bathtub. (AR 386.) She sometimes needs help to sit on the toilet. (*Id.*) Plaintiff needs either a timer or someone to remind her to take her medication. (AR 387.) Plaintiff provides care for her daughter. (AR 386.) She takes her to school, does her laundry, and cooks for her. (*Id.*) Plaintiff states that she is always in some type of pain. (AR 392.)

If Plaintiff wakes up and is not in pain, she will complete all household chores or will try to complete as much as possible before the pain makes her sit down. (AR 387.) It takes her approximately six hours to complete but she finds that she needs help or encouragement to complete. (*Id.*) Plaintiff explains that if she is unable to do housework it is because the work strains her back. (AR 388.)

6

Plaintiff goes outside about once a week. (AR 388.) She drives. (*Id.*) However, Plaintiff does not go out alone because she fears that she will fall or that her legs will "go out on" her. (*Id.*) Plaintiff goes shopping for food three times a month. (*Id.*) Each trip takes two hours. (*Id.*) She can pay bills, count change, handle a savings account, and use a checkbook or money orders. (*Id.*) Plaintiff enjoys swimming, reading, and playing video games. (AR 389.) She does these activities twice a week. (*Id.*) However, if she is in pain from sitting, she cannot play video games. (*Id.*) She talks on the phone daily but does not go anywhere. (*Id.*) She does not like other people seeing that she is unable to walk. (AR 390.)

Plaintiff's condition affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, see, concentrate, remember, understand, follow instruction, use hands, and get along with others. (AR 390.) Plaintiff can walk a quarter of a mile before needing to rest 10 minutes. (*Id.*) She is unable to finish what she starts. (*Id.*) She can follow written instructions very well but is unable to follow verbal instructions because she gets confused. (*Id.*) She does not get along well with authority figures and does not handle changes in her routine or stress well. (AR 391.) Plaintiff also has a fear of falling and a fear of dropping dead at any moment. (*Id.*)

### 3. Third Party Function Report

On February 16, 2015, Plaintiff's friend, William Caldwell, submitted a function report regarding Plaintiff's abilities. (AR 357-65.) At that time, he had known Plaintiff for five years and explained that they spent a lot of time together. (AR 357.) He describes that Plaintiff is unable to walk or sit up for long periods of time and that she spends her days complaining about the pain. (AR 357-58.) Plaintiff will also "half clean the kitchen." (AR 358.) Plaintiff takes care of her child. (*Id.*) Mr. Caldwell states that prior to her illness, Plaintiff was able to do "everything needed for daily living." (*Id.*) According to Mr. Caldwell, Plaintiff's conditions affect her sleep because she "toss[es] and turn[s] all night." (*Id.*) He also states that he helps Plaintiff to dress, helps her in and out of the tub, and that she sometimes

needs help onto and off the toilet seat.  (*Id.* )  He notes that Plaintiff does not need to be reminded to take care of her personal needs, but that he "constantly" has to tell Plaintiff to take her medication.  (AR 359.)  She also needs to be reminded to go to the doctor and needs someone to accompany her.  (AR 361.)

Mr. Caldwell explains that Plaintiff's cooking habits have changed since the onset of her conditions but noted that she still prepares meals daily.  (AR 359.)  It takes Plaintiff four hours to prepare meals.  (*Id.*)  According to Mr. Caldwell, Plaintiff does not do any household chores because she is always in pain and cannot finish.  (AR 359-60.)  Plaintiff needs encouragement and help to do household chores.  (AR 360.)  He states that Plaintiff goes outside once or twice per week, but she cannot go alone because "she falls sometimes."  (*Id.*)  Plaintiff can drive.  (*Id.*)  She shops for food in stores four or five times per month.  (*Id.*)  Plaintiff's ability to handle money has not changed since her conditions began and she can pay bills, count change, handle a savings account, and use a checkbook.  (AR 360-61.)  Plaintiff plays video games, but not often.  (AR 361.)  Plaintiff is in "bed most of the time."  (*Id.*)  Mr. Caldwell notes that since Plaintiff started falling, she does not act the same.  (AR 364.)  Plaintiff is "snappy."  (AR 363.)  Plaintiff complains about headaches and pain throughout her body.  (AR 364.)

As to Plaintiff's social activities, Mr. Caldwell states that Plaintiff uses Facebook every day.  (AR 361.)  Plaintiff has problems getting along with others because she believes that everyone is "out to get her."  (AR 362.)  Mr. Caldwell informs that there have been no changes to Plaintiff's social activities since her conditions began.  (*Id.*)  Plaintiff does not get along well with authority figures.  (AR 363.)  She was terminated from her job with Agency One Insurance because of problems getting along with other people.  (*Id.*)  She does not trust people.  (*Id.*)  She does not handle stress or changes in routine well.  (*Id.*)   Mr. Caldwell states that Plaintiff "is very very very mean." (AR 364.)

///

Mr. Caldwell opines that Plaintiff is unable to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, see, climb stairs, concentrate, remember, complete tasks, understand, follow instructions, use her hands, or get along with others because she is always in pain. (AR 362.) Plaintiff cannot walk far before having to rest for five minutes prior to continuing. (*Id.*) She uses a walker to walk. (AR 363.) Plaintiff cannot pay attention for long and she does not finish what she starts. (AR 362.) She is "okay" at following spoken instructions. (*Id.*)

### 4. Applicable Legal Standards

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (internal quotation marks omitted) (quoting *Lingenfelter*, 504 F.3d at 1036). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id.* The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 5. Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 30.) The ALJ relied on

the following reasons: (1) inconsistent statements; and (2) lack of supporting objective medical evidence. (AR 67-70.) No malingering allegation was made, and therefore the ALJ's reasons must be "clear and convincing."

### a. Reason No. 1: Inconsistent Statements

Here, the ALJ found Plaintiff's testimony "that her in-home support worker must do all of her shopping for her," was inconsistent with Plaintiff's report that she shopped with her daughter for a prom dress. (AR 35.) The ALJ also relied upon inconsistencies found in Plaintiff's statements to doctors, as noted in progress reports. (AR 32, 35.) For example, Plaintiff reported in October 2016 that she "no longer needed a walker, sometimes uses a cane, but otherwise does not even need a cane and felt she was getting better." (AR 35, citing AR 787-88 ("patient was seen for follow-up reevaluation of total body pain and …. no longer walks with a walker, but walks at certain circumstances with a cane, but otherwise does not with cane anymore and feels it is getting better.") Earlier in 2016, Plaintiff reported to her doctor that "she was feeling better because she was taking Norco," that she "had received 50% pain relief with her current pain medication." (AR 32, citing AR 604, 789.)

An ALJ may rely on "ordinary techniques of credibility evaluation, such as … prior inconsistent statements concerning the symptoms." *Tommasetti v. Astrue*, 533 F.3d 1035, 10039 (9th Cir. 2008) (citation omitted); *see also Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009) (affirming ALJ's credibility determination based, in part, on inconsistencies between claimant's testimony about COPD symptoms and her statements to doctors that her COPD was "fine" and she became wheezy only when engaging in heavy exertion."); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (affirming credibility determination based, in part, on comparisons between claimant's testimony and her prior answers to physicians). While "a single discrepancy fails to justify the wholesale dismissal of a claimant's testimony," *Popa v. Berryhill*, 872 F.3d 901, 906-07 (9h Cir. 2017), the ALJ cited to several inconsistencies between Plaintiff's testimony and her statements to doctors, as well

as an inconsistency in her own testimony. "Where evidence may be susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Orn*, 495 F.3d at 630 (citing *Burch*, 400 F.3d at 679).

With respect to the third-party statement of William Caldwell, Plaintiff alleges that the ALJ improperly rejected the statement. (Pl's Mem. 10.) The Commissioner disagrees. (Def's Mem. 10.)

The ALJ may discount the testimony of lay witnesses only if he provides "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *see also Molina*, 674 F.3d at 1114. Here, the ALJ gave "little weight" to Mr. Caldwell's testimony for two reasons. (AR 34.)

First, the ALJ reasoned that Mr. Caldwell is "likely not medically trained" and as such he is unable to make "exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or the frequency or intensity of unusual moods or mannerisms." (AR 34.) The Court is not persuaded by this line of reasoning. "Lay witnesses are not required to have medical training, or to provide exact details of their observations. That is what makes them 'lay' witnesses." *May v. Berryhill*, No. CV 17-4085-PLA, 2018 WL 2094347, at *8 (C.D. Cal. May 4, 2018). The Ninth Circuit has consistently held that lay testimony, including that of friends and family is "competent evidence that an ALJ must take into account." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see also Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). To discount the " 'accuracy' of a lay witness[] statement because the witness is not medically trained would allow an ALJ to routinely reject" lay witness statements for that reason alone. *May*, 2018 WL 2094347, at *8. Thus, this was not a germane reason to discount Mr. Caldwell's statements.

Second, the ALJ found that due to Mr. Caldwell's relationship with Plaintiff, Mr. Caldwell could not "be considered a disinterested third party witness." (AR 34.) However, a witness's relationship to a plaintiff is not a "valid reason to discount his

observations. To do so 'contradicts our insistence that, regardless of whether they are interested parties, friends and family members [are] in a position to observe a claimant's symptoms and daily activities [and] are competent to testify as to his or her condition.'" *Diedrich*, 874 F.3d at 640 (quoting *Valentine*, 574 F.3d at 694). This reason is also insufficient to discount Mr. Caldwell's statements.

Next, the Commissioner notes that "'[i]nconsistency with medical evidence' is undoubtedly a valid and germane reason for discounting lay witness testimony." (Def's Mem. 10, quoting *Bayliss*, 427 F.3d at 1218.) The Court is unpersuaded that the ALJ discounted Mr. Caldwell's testimony because it was inconsistent with the medical evidence. The ALJ noted that Mr. Caldwell's "statements are not entirely inconsistent with the medical evidence discussed above." (AR 34.) The ALJ instead gives "little weight" to Mr. Caldwell's statements based on Mr. Caldwell's lack of medical training and his relationship with Plaintiff. (*Id.*)

For the reasons explained above, the Court finds that the ALJ erred in evaluating Mr. Caldwell's statements.

The Commissioner argues that "[e]ven if the ALJ did not sufficiently explain his rejection of Mr. Caldwell's testimony, this would be no more than harmless error." (Def's Mem. 10-11.) Plaintiff contends that Mr. Caldwell's statements in the function report do not "mirror" Plaintiff's complaints, but rather that Mr. Caldwell informs that Plaintiff believes "everybody is out to get her" and that Plaintiff is "very, very mean." (Pl's Mem. 10.) According to Plaintiff, these statements are of significance because the jobs identified by the ALJ all require social interaction. (*Id.*) The Commissioner counters that Plaintiff herself stated "she had problems getting along with others." (Def's Mem. 11, citing AR 390.)

An ALJ's error is harmless so long as it is "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115. "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently

conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different determination." *Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). The ALJ's error is harmless if the statements made by the lay witness do "not describe any limitations beyond those [claimant] herself described" and the ALJ properly rejected the claimant's testimony regarding those limitations. *Molina*, 674 F.3d at 1121-22; *see also Sievers v. Berryhill*, 734 F. App'x 467, 470-71 (9th Cir. 2018).

Here, the statements made by Mr. Caldwell are sufficiently similar to the statements offered by Plaintiff. In her function report, Plaintiff stated that she had been fired or laid off due to problems getting along with others because she "felt picked on" and "felt they didn't want to see [her] do well." (AR 391.) She also noted that she has problems getting along with her family, friends, and neighbors because she "thinks they steal[] or move [her] stuff." (AR 390.) In the function report prepared by Mr. Caldwell, he states that Plaintiff thinks everyone is "out to get her." (AR 362.) Furthermore, Mr. Caldwell describes Plaintiff as being mean. While, Plaintiff does not describe herself as mean, Plaintiff has been found to have an irritable affect by her physicians. (*See* AR 507, 649.) The Court agrees with the Commissioner that the statements offered by Mr. Caldwell do not describe any limitations beyond those described by Plaintiff. As a result, the Court finds that the ALJ's failure to properly consider Mr. Caldwell's statements constitutes harmless error.

With respect to the assistance Plaintiff receives from In-Home Support Services[4] ("IHSS"), Plaintiff argues that the ALJ failed to "provide any analysis of

---

[4] "In–Home Support Services is a state-funded program administered by counties that provides assistance to aged, blind, and disabled individuals so they can safely remain in their homes." *Yang v. Colvin*, No. CV 14-2138-PLA, 2015 WL 248056, at *7 n. 13 (C.D. Cal. Jan. 20, 2015) (citing In–Home Support Services Program, California Department of Social Services, http://www.cdss.ca.gov/agedblinddisabled/pg1296.htm); *see also* Cal. Welf. & Inst. Code § 12300(a) (provides services to those "unable to perform the services

13

how one agency finds [Plaintiff] so disabled" that it provides in-home support, but "another government agency says she can perform light work." (Pl's Mem. 9; Pl's Reply 4-5.) The Commissioner counters that there is no evidence in the record showing the decision to award in-home support, and moreover, that another agency's decision is not binding. (Def's Mem. 9.)

Plaintiff cites *McCartey v. Massanari*, 298 F.3d 1078, 1076 (9th Cir. 2002), in support of her proposition that the ALJ erred by not giving "great weight" to IHSS's determination that Plaintiff was entitled to in-home support. (Pl's Reply 4.) This case is inapposite. In *McCartey*, the Ninth Circuit found that the ALJ "must ordinarily give great weight to a [Department of Veteran Affairs ("VA")] determination of disability" unless the ALJ provides "persuasive, specific, valid reasons" for assigning the VA's determination less weight. *McCartey*, 298 F.3d at 1076. The Ninth Circuit reasoned that "great weight" should be given "because of the marked similarity between [the] two federal disability programs." *Id.* Of those similarities, most notable is the fact that the "programs serve the same governmental purpose–providing benefits to those unable to work because of a serious disability." *Id.* Here, the determination was made by IHSS, a state funded and county run program, to provide Plaintiff with in-home support, not a federal agency with marked similarity. Plaintiff fails to point to any case law that would suggest *McCartey* was meant to apply to *any* government agency disability determination. The Court finds that the ALJ was not required to assign IHSS's decision to provide Plaintiff with in-home support "great weight."

### b. Reason No. 2: Lack of Objective Medical Evidence

The lack of supporting objective medical evidence cannot form the sole basis for discounting testimony, but it is a factor that the ALJ may consider in making a credibility determination. *Burch*, 400 F.3d at 681; *Rollins v. Massanari*, 261 F.3d

themselves and who cannot safely remain in their homes or abodes of their own choosing unless these services are provided")

853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

With respect to Plaintiff's anxiety and depression, the ALJ noted that a January 2015 psychiatric examination found Plaintiff to be "alert, oriented, cooperative with exam, had good eye contact, a labile mood, a sad affect, and some short-term memory impairment." (AR 30; *see* AR 515.). In February 2015, Plaintiff followed up with a licensed clinical social worker ("LCSW") who found Plaintiff to be depressed. (AR 31, 503-04.) The LCSW reported that Plaintiff's mood was "okay," she had a euthymic and sad affect, average grooming, appropriate eye contact, cooperative interaction, average intellectual functioning, organized thought process, and intact attention. (AR 503.) However, the LCSW noted that Plaintiff's insight and judgement was impaired. (*Id.*) Plaintiff was found to respond "well to active listening, support, and encouragement." (AR 504.) The LCSW found Plaintiff responsive to rapport building and was able to express and process her emotions appropriately. (*Id.*) Plaintiff was referred to follow-up with individual therapy. (*Id.*) The following month a psychiatric examination found Plaintiff to be "alert, oriented, cooperative with exam, good eye contact," good judgement and insight, clear speech but depressed mood and irritable affect. (AR 506-07.) A July 2016 depression screening found Plaintiff to be severely depressed. (AR 647.) The ALJ did note that Plaintiff had an increase in depression and anxiety in April 2017. (AR 33; *see* AR 916.) However, the following month Plaintiff was found to be feeling better but still had a depressed mood. (AR 915.)

With respect to Plaintiff's back and leg pain, the ALJ noted that a December 17, 2014 physical examination found Plaintiff's back was "normal" with a full range of motion but had pain with movement. (AR 30, 523.) Plaintiff was diagnosed with hypertension and back pain. (AR 523.) A subsequent x-ray of Plaintiff's cervical spine found "no fractures, dislocations or destructive lesions" and "no abnormalities of the paraspinous soft tissues." (AR 496.) The x-ray did find mild scoliosis, multilevel mild spondylitic spurring, and cervical degenerative disc disease at C5 to

C7.  (*Id.*)  A lumbar spine x-ray also noted normal stature and alignment of the vertebrae, no fractures or lesions, but did note "small traction spurs" and found mild spondylosis of the lumbar spine.  (AR 498.)

The ALJ also noted that Plaintiff sought treatment on January 8, 2015, complaining of "bilateral leg pain" and stated that she was "constantly falling."  (AR 30; *see* AR 514-17.)  A neurological exam found that Plaintiff was alert and oriented, and had normal gait, strength, tone and reflexes.  (AR 515.)  A musculoskeletal examination found Plaintiff had crepitus knees, left knee tenderness and swelling, as well as right knee tenderness and swelling.  (*Id.*)

However, the ALJ fails to discuss Plaintiff's January 22, 2015 follow-up appointment in which a musculoskeletal examination found Plaintiff had an "[a]ntalcic gait," crepitus knees, left knee tenderness and swelling, as well as right knee tenderness and swelling.  (AR 512.)  Plaintiff was diagnosed with polyarthralgia and lymphocytic leukemia.  (*Id.*)  Similarly, a February 25, 2015 neurological exam found Plaintiff to be alert and oriented, but found Plaintiff had "diminished sensation [in] lower extremities to knees," as well as decreased strength in her right and lower extremities.  (AR 509.)  Plaintiff was diagnosed with multiple sclerosis, lymphocytic leukemia, and insomnia secondary to depression with anxiety. (*Id.*)

The ALJ did note that Plaintiff underwent an orthopedic consultation in April 2015.  (AR 31, 525.)  The musculoskeletal examination found no evidence of swelling, effusion, erythema, warmth, or deformity of the shoulders, elbows, and wrists.  (*Id.*)  The examination did find a limited range of motion in her shoulders, hips, and thoracolumbar spine. (AR 528.)  A neurological exam found Plaintiff had "normal strength . . . in all major muscle groups."  (AR 530.)  Plaintiff was found to have myoligamentous strain to her cervical spine, lumbosacral spine, right and left shoulder, and knees.  (*Id.*)  Plaintiff had normal toes.  (*Id.*)  Plaintiff did "not use any assistive device for ambulation" but had a slow gait.  (AR 528.)

///

The ALJ also noted a May 2015 magnetic resonance imaging scan ("MRI") of Plaintiff's thoracic spine, which found "normal kyphosis of the thoracic spine," "vertebral bodies are normal in height and signal intensity," "thoracic cord is normal in signal intensity and caliber at all levels," and normal paravertebral soft tissues, disk height and margin of the disk. (AR 544.) A cervical spine MRI found straightening of the cervical spine, but normal vertebral bodies, paravertebral soft tissues, cervical cord, and craniocervical junction. (AR 546.) There was a 1 mm posterior disk bulge at C2-C3, a 1-2 mm posterior central broad-based disk protrusion and mild narrowing of the midline thecal sac at C4-C5, a 1 mm posterior disk osteophyte complex and mild narrowing at C5-C6, a 1mm posterior disk osteophyte complex and moderate to sever disk narrowing with disk desiccation at C6-C7. (AR 547.)

In addition, the ALJ discussed a June 15, 2015 medical visit in which Plaintiff was found to have a "full range of motion without pain" in her neck, grossly normal cranial nerves, normal appearance tone and strength of muscles, normal reflexes, stable gait, and normal spine with "no limitation of movement or defect in curvature, lumbar flexion, and full extension. (AR 535.) The physician's diagnosis was that Plaintiff suffered from multiple sclerosis and numbness. (*Id.*) Plaintiff's physician noted that Plaintiff has multiple sclerosis "but not all her symptoms are due to MS. Paranoia, depression, chronic pain [are] not due to MS." (AR 534.)

The ALJ also noted Plaintiff's August 2015 lumbar spine MRI. (AR 32.) The MRI showed "circumferential disk bulging and mild to moderate right foraminal narrowing," as well as bilateral facet arthropathy. (AR 816.) The MRI showed "disk height loss posteriorly and circumferential disk bulging." (*Id.*) The ALJ noted that an August 17, 2015 physical examination of Plaintiff showed Plaintiff's neck had a full range of motion without pain, normal tone and strength of muscles, normal spine with no limitations, and a stable gait. (AR 32, 792.) She was diagnosed with multiple sclerosis, chronic pain, and "mental health issues." (AR 793.)

On February 1, 2016, Plaintiff had an electromyography ("EMG") study on her left arm and right leg. (AR 598-99.) The study rendered a normal EMG. (AR 599.)

The ALJ also pointed to March 2016 pain management notes which showed Plaintiff reported 30% overall pain relief, but Plaintiff still complained of lower back pain. (AR 32, citing AR 613.) The ALJ noted that Plaintiff's April 17, 2016 MRI of her shoulder found a "moderate to high-grade predominately articular sided supraspinatus tendon tear near the footprint, with undersurface tendon retraction of approximately 16 mm." (AR 33, citing AR 812.) The tear involved "70% of the tendon thickness with some bursal sided fibers still intact." (AR 812.)

Also, of note, in September 2016 Plaintiff's progress notes state that Plaintiff reported "feeling better because she is taking Norco now." (AR 789.) Similarly, on September 15, 2016, Plaintiff reported 50% pain relief on her current medications. (AR 604.) In addition, the ALJ notes that Plaintiff's "cervical myofasciitis, left frozen shoulder, lateral epicondylitis, and lumbosacral myofasciitis had all improved." (AR 33, citing 789.) Similarly, the ALJ discussed a September 29, 2016 examination, noting that Plaintiff's physician found decreased tenderness, less symptoms, and overall improvement. (AR 33, 791.) The physician, however, also noted "[l]eft shoulder range of motion is 75%" and found that if Plaintiff's right leg pain does not end, he will recommend a steroid injection and consider surgery. (*Id.*)

The ALJ also discussed October 2016 progress notes, which he stated indicate that Plaintiff "no longer needed a walker, sometimes uses a cane, but otherwise does not even need a cane and felt she was getting better." (AR 33, citing 787-88.) The ALJ correctly noted that Plaintiff's left shoulder rotator cuff tear, facet syndrome of L4-L5 and L5-S1, scoliosis of spine, right-sided sciatica, and right iliotibial band syndrome were improving. (AR 33.)

The ALJ then discussed a May 2017 physical examination. (AR 34.) The ALJ noted that Plaintiff's physician found Plaintiff's neck to be normal with no tenderness

but had "some pain tenderness and spasms in her lower back." (AR 34, citing AR 847-48.) Plaintiff reported seven out of ten in pain. (AR 847.)

The Court finds that the ALJ thoroughly considered Plaintiff's medical records (*see* AR 30-35) and found that the records did not support Plaintiff's allegations of disabling symptoms and limitations (*see* AR 30). *See Reddick*, 157 F.3d at 725. Throughout the records are examination notes and reports showing normal results, all of which the ALJ was permitted to rely on in assessing the credibility of Plaintiff's testimony. *See Garza v. Astrue*, 380 F. App'x 672, 674 (9th Cir. 2010) (finding that an ALJ properly considered a claimant's normal exam findings when noting a lack of objective medical evidence to support the claimant's allegations); *Margolis v. Berryhill*, No. CV 17-5047 SS, 2018 WL 3129775, at *10 (C.D. Cal. June 22, 2018) (holding that ALJ may rely on normal and unremarkable examinations in discounting a claimant's subjective testimony). While clearly other evidence in the records shows a history of various medical problems, the ALJ was allowed to weigh the multiple normal examination results in evaluating Plaintiff's credibility. Where, as here, the evidence might be susceptible to more than one rational interpretation, the ALJ's decision should be upheld. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ.").

### c.      Conclusion

The Court finds that each of the ALJ's reasons for discounting Plaintiff's subjective symptom testimony, is a clear and convincing reason, supported by substantial evidence, for discounting Plaintiff's testimony. Accordingly, the ALJ properly evaluated Plaintiff's subjective complaints.

### B.      <u>The Additional Evidence Presented Warrants Remand</u>

After the ALJ's unfavorable decision on August 16, 2017, Plaintiff submitted additional medical evidence to the Appeals Council. (*See* AR 15-20, 44-50, 54-55.)

These records are dated between May 30, 2017 and November 15, 2017. (*See id.*; AR 2.) Plaintiff contends that in light of the evidence submitted to the Appeals Council, the ALJ's decision is no longer supported by substantial evidence. (Pl's Mem. 5-8.) The Commissioner counters that the additional evidence submitted to the Appeals Council does "not change the fact that substantial evidence supports the ALJ's decision." (Def's Mem. 2-4.)

The Administrative Record shows that the Appeals Council found that the additional evidence provided "does not show a reasonable probability that it would change the outcome of the decision." (AR 2.) The Appeals Council did not explicitly state that it considered the additional evidence. (*See id.*) However, because the Appeals Council concluded that the additional evidence provided would not change the outcome, the Appeals Council necessarily considered the evidence in order to make the finding. *See Reyes v. Comm'r of Soc. Sec. Admin.*, No. CV-17-08192-PCT-SMB, 2019 WL 2098755, at *3 (D. Ariz. May 14, 2019); *Mayeda-Williams v. Comm'r of Soc. Sec. Admin.*, No. 1:18-CV-0009-HRH, 2019 WL 157918, at *5 (D. Alaska Jan. 10, 2019).

### 1. Legal Standard

When the Appeals Council considers new evidence in denying review of the ALJ's decision, this Court considers on appeal both the ALJ's decision and the additional material submitted to the Appeals Council. *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); *see Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]e have routinely considered evidence submitted for the first time to the Appeals Council to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence."). When a claimant presents new evidence to the Appeals Council, the Court must evaluate whether ALJ's decision is supported by substantial evidence, in light of the entire record, including the newly presented evidence. *Warner v. Astrue*, 859 F.Supp.2d 1107, 1115 (C.D. Cal. April 26, 2012). If there is a "substantial likelihood the ALJ's

consideration of the additional evidence submitted to the Appeals Council will materially alter the ALJ's disability analysis," remand is warranted. *Id.* at 1117. As discussed in *Warner*, "it does not matter whether the ALJ's decision *when made* was supported by substantial evidence and was free from legal error *on the record then existing*, if later submitted evidence materially undermines the ALJ's decision." *Id.* at 1115 n.10 (emphasis in original).

### 2. Additional Evidence Provided

Here, the additional records provided to the Appeals Council, but not the ALJ, include (1) a June 17, 2017 MRI ("June 2017 MRI"); (2) an August 23, 2017 letter from George Wang, M.D., and corresponding medical records; (3) medical notes pertaining to Plaintiff's November 15, 2017 visit to Thomas McCloy, M.D.; and (4) a November 14, 2017 function assessment completed by Dr. Wang. (*See* Pl's Mem. 5-8; Def's Mem. 2-4; AR 2, 15-17, 18-20, 45-46, 54-55.)

On August 23, 2017, Dr. Wang, Plaintiff's neurologist, sent a letter to Ajay Patel, M.D., a physician at AppleCare Physicians Group. (AR 54; *see* AR 846.) In that letter Dr. Wang opined that "a lesion in the cervical spinal cord of the right side . . . is likely causing some of her muscle spasticity on the right side." (AR 54.) Dr. Wang based this opinion on a "recent cervical spine MRI." (*Id.*) While Dr. Wang does not provide the date of the MRI, the record suggests that the MRI he is referencing is the June 2017 MRI. (*See id.*; AR 45-46.) The MRI of Plaintiff's cervical spine showed a "focal lesion . . . in the posterior lateral aspect of the right side of the spinal cord at the C4 level . . . measuring approximately 3 x 8 mm." (AR 45-46.) The MRI also resulted in a finding of "[m]ultilevel degenerative disease and facet arthritis" in Plaintiff's cervical spine. (AR 45.) In the letter, Dr. Wang found that the spinal cord lesion was "unfortunately permanent." (AR 54.) Dr. Wang suggested that Plaintiff rely on tizanidine but "decrease or discontinue cyclobenzaprine" and that he would be "continuing [Plaintiff's use] of Copaxone to prevent future flares." (*Id.*)

In November 2017, Dr. Wang prepared a "physical medical source statement," similar to that of a function report. (AR 18-20.) Dr. Wang found Plaintiff to suffer from multiple sclerosis and degenerative disc disease. (AR 18.) He noted Plaintiff's symptoms include "fatigue, trouble concentrating, weakness in legs, [and] low back pain." (*Id.*) Dr. Wang found that Plaintiff showed "mild upper arm and moderate leg weakness," "[d]ecreased sensation in lower extremities," and "unsteady gait." (*Id.*) Dr. Wang opined that Plaintiff could walk for half a block without rest or severe pain and would need to get up after 20 minutes of sitting. (*Id.*) According to Dr. Wang, Plaintiff would need to include unspecified periods of walking around during an eight-hour work day. (AR 19.) Similarly, Plaintiff would need to take unscheduled breaks every 15 minutes for "unknown" periods of time before returning to work. (*Id.*) He also noted that Plaintiff would need to use a cane or other device to engage in standing or walking. (*Id.*) Plaintiff can occasionally lift and carry less than 10 pounds but could rarely lift and carry 10 pounds and could never lift and carry 20 or 50 pounds. (*Id.*) Plaintiff can occasionally look down, turn her head, look up, or twist. (*Id.*) However, Dr. Wang opined that Plaintiff could never stoop, crouch, or climb ladders. (*Id.*) Plaintiff can rarely climb stairs. (*Id.*) Dr. Wang notes that Plaintiff was likely to have good and bad days, and as a result Plaintiff would be absent from work more than four days per month. (AR 20.) As a result of Plaintiff's conditions, Dr. Wang informs that Plaintiff may be limited from driving, she will need to avoid hot temperatures as a result of her multiple sclerosis and will need to avoid cold temperatures as to avoid exacerbating Plaintiff's arthritis. (*Id.*)

Lastly, Dr. McCloy examined Plaintiff on November 15, 2017. (AR 15.) Plaintiff reported that "[s]he has times when she feels quite good but it will change quickly and she will suddenly feel very tired." (*Id.*) Dr. McCloy's examination of Plaintiff rendered normal results. (AR 16.)

///

///

### 3. **Plaintiff's Contentions**

Plaintiff contends that the June 2017 MRI, as well as the letter and function report prepared by Dr. Wang demonstrate the severity and progression of Plaintiff's multiple sclerosis. (Pl's Mem. 6.) The additional records, Plaintiff argues, undermine the ALJ's determination because the ALJ gave partial weight to a consultative examiner who failed to examine "any records" and was not aware of Plaintiff's multiple sclerosis diagnosis. (Pl's Mem. 6.) Similarly, Plaintiff argues that the ALJ erred in giving "great weight to the non-examining state agency doctors that evaluated the case in April or August 2015" who did not review any records after August 2015. (Pl's Mem. 8.)

### 4. **Commissioner's Contentions**

The Commissioner contends that the additional evidence does not alter "the fact that substantial evidence supports the ALJ's decision." (Def's Mem. 4.)

First, the Commissioner points to the fact that Dr. Wang's letter was sent a week after the ALJ's decision and argues that the letter does not suggest that Plaintiff had any physical or mental limitations prior to the ALJ's decision. (Def's Mem. 4.) Similarly, the Commissioner argues that the function report prepared by Dr. Wang "at best, suggests further deterioration of Plaintiff's condition" and "is not relevant to whether Plaintiff was disabled." (Def's Mem. 5.)

Next, the Commissioner notes that "Dr. Wang's findings are undermined by a contemporaneous treatment note from Dr. McCloy" where Plaintiff reported she "feels quite good" but "will also suddenly feel very tired." (Def's Mem. 5.) On November 15, 2017, Dr. McCloy examined Plaintiff. (AR 15.) Plaintiff reported that "[s]he has times when she feels quite good but it will change quickly and she will suddenly feel very tired." (*Id.*) Dr. McCloy's examination of Plaintiff rendered normal results. (AR 16.) The Commissioner contends that the lack of abnormal results, "strongly undermines the persuasiveness of Dr. Wang's assessment." (Def's Mem. 4-5.)

### 5. Analysis

The Court reviews the ALJ's decision in light of the entire record, including the additional evidence provided to the Appeals Council in the first instance. For the reasons explained below, the Court finds that, in light of the additional evidence, the ALJ's decision is not supported by substantial evidence.

First, the ALJ noted that Plaintiff's multiple sclerosis diagnosis constituted a severe impairment (AR 26-27) but found that the improvement of Plaintiff's symptoms warranted a less restrictive RFC finding. (*See* AR 30-34.) Plaintiff argues that the additional evidence submitted to the Appeals Council undermines the ALJ's decision because it shows the severity and progression of Plaintiff's multiple sclerosis. (Pl's Mem. 6; Pl's Reply 3.) The Court agrees.

Courts have routinely held that additional evidence documenting the worsening of claimant's condition warrants remand. *See, e.g.*, *Warner*, 859 F. Supp. 2d at 1116-17 (finding that remand was warranted where additional evidence showed the worsening of claimant's depression and anxiety); *Colmenero v. Berryhill*, No. 1:16-cv-00649-GSA, 2018 WL 3689319, at *12 (E.D. Cal. Aug. 3, 2018) (holding that new scans showing progression of claimant's lymphoma warranted remand). This is because, "[w]hen a claimant's condition is deteriorating, the most recent evidence is most probative." *See Colmenero*, 2018 WL 3689319, at *12 (citing *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1982)).

The additional evidence Plaintiff provided to the Appeals Council documented a new lesion in Plaintiff's cervical spine, and the lesion was noted to be compatible with a demyelinating lesion. (AR 45-46.) Dr. Wang's letter to Dr. Patel opines that the lesion is permanent and is likely causing spasticity. (AR 54.) The MRI along with Dr. Wang's letter documents a progression of Plaintiff's condition that was not previously before the ALJ. Similarly, Plaintiff's June MRI along with Dr. Wang's opinion, directly refutes the ALJ's finding that Plaintiff's symptoms were improving. *See Prather v. Colvin*, No. 5:12-CV-171-FL, 2013 WL 4806958, at *7-*8 (E.D. N.C.

Sept. 9, 2013) (finding that an MRI documenting new lesions is relevant as to whether claimant's condition was improving and supports claimant's claims that her condition was not improving). The additional evidence warrants remand because it "sheds additional light on the nature, extent, and persistence" of Plaintiff's disability. *See Beltz v. Berryhill*, 679 F. App'x 576, 577 (9th Cir. 2017). Because, the additional evidence undermines the ALJ's decision and provides additional information as to the progression of Plaintiff's ongoing condition, there is a substantial likelihood that the evidence would materially alter the ALJ's decision, and, thus, remand is warranted.

Second, as noted by Plaintiff, the ALJ relied on medical opinions from several sources when determining Plaintiff's RFC. (*See* AR 31, 34-35; Pl's Mem. 6, 8.) The ALJ gave partial weight to the opinion of orthopedic consultative examiner Frank Guellich, M.D., finding that claimant would be able to perform light exertional work. (AR 31.) The ALJ discounted Dr. Guellich's opinion to the extent the opinion limited Plaintiff "to only occasional handling, fingering, and feeling." (*Id.*) Plaintiff claims that the ALJ gave great weight to non-examining state agency doctors. (Pl's Mem. 8.) The ALJ gave great weight only to the opinions of Tawnya Brode, Psy.D., and K. Gregg, M.D., from Disability Determination Services ("DDS"). (*See* AR 34.) Drs. Brode and Gregg reviewed Plaintiff's mental status not her physical condition. (*See id.*) The ALJ, however, gave only partial weight to I. Herman, M.D., and A. Pan, M.D., from DDS. (*Id.*) Drs. Herman and Pan examined Plaintiff's physical functions and opined that Plaintiff was limited to less than light work. (*Id.*) In discounting the opinions of Drs. Herman and Pan, the ALJ specifically recognized that they did not have the benefit of reviewing all the medical evidence in the record. (AR 35.)

When the ALJ relies on a medical opinion of a physician that did not have the benefit of the claimant's medical records, additional evidence provided to the Appeals Council may require remand. *See Warner*, 859 F. Supp. 2d at 1116-17. In

*Warner*, the court found that remand was necessary where the ALJ had "relied on the medical expert's opinion, which adopted the consultative examiner's opinion from an interview" of the claimant, but did so "without the benefit of any of [claimant's] medical records." *Id.* There, the claimant submitted additional evidence to the Appeals Council, including records of a psychiatric hospitalization prior to the ALJ's adverse finding and psychiatric hospitalization after the ALJ's decision. *Id.* at 1112. The additional evidence also included a medical work restriction questionnaire, dated nearly two months after the ALJ's decision, from claimant's psychiatrist, whom had been treating claimant on a monthly basis for three years. *Id.* at 1110, 1112. There, the court found that given the ALJ's reliance on the medical expert's opinion, when neither the medical expert nor the consultative examiner had access to the records presented to the Appeals Council, "[t]he circumstances of the case indicate[d] that there is a substantial likelihood that the ALJ's consideration of the additional evidence submitted to the Appeals Council will materially alter the ALJ's disability analysis." *Id.* at 1117.

Here, Plaintiff submitted to the Appeals Council records that were not before Drs. Guellich, Herman, and Pan. (*See* AR 85-87, 102-04, 119-21, 134-36, 525-32.) The medical opinions were rendered in 2015, two years prior to the ALJ's determination. (*See id.*) As such, neither physician had the opportunity to review Plaintiff's medical records after 2015. Because the opinions of Drs. Guellich, Herman, and Pan were made so early, their opinions do not include information regarding the progression of Plaintiff's condition during the relevant period. Of particular note, is Dr. Guellich's failure to document in his examination report Plaintiff's multiple sclerosis diagnosis (*see* AR 526), as well as Dr. Guellich's cervical spine examination which noted that there was "no evidence of increased muscle tone or muscle spasm. Range of motion, carried out actively and voluntarily, demonstrates no discernible limitation in any plane." (AR 529). If Dr. Guellich did not recognize that Plaintiff suffered from multiple sclerosis, it is difficult to see how

he could have formulated an opinion as to the severity and progression of Plaintiff's condition. In finding Plaintiff's RFC, the ALJ discounted the opinions of Drs. Guellich, Herman, and Pan particularly because there was new evidence in the record that the doctors had not been able to review. (AR 35.) In light of the additional evidence it is reasonable to infer that the ALJ may have further discounted these medical opinions because the evidence offered additional information not present when they formulated their opinion. Thus, there is a substantial likelihood that the additional evidence provided to the Appeals Council would alter the weight given to those medical opinions. If the ALJ were to give the opinions more or less weight in light of the new evidence, this would materially alter the ALJ's decision.

Finally, in determining Plaintiff's RFC, the ALJ relied on the functional limitations set forth by Drs. Guellich, Herman, and Pan. The additional evidence provided to the Appeals Council includes a function report which documents functional limitations beyond those set forth by Drs. Guellich, Herman, and Pan. For example, Dr. Wang notes that Plaintiff is unable to engage in occasional standing or walking without a cane or assistive device, while Dr. Guellich notes that a device is not necessary for ambulation. (*See* AR 19, 528.) Drs. Guellich, Herman, and Pan each opine that Plaintiff is able to occasionally lift or carry 20 pounds and Plaintiff can frequently lift or carry 10 pounds. (AR 102, 119, 531.) However, Dr. Wang opines that Plaintiff can rarely lift or carry 10 pounds and could never lift or carry 20 pounds. (AR 19.) Similarly, Dr. Guellich opines that Plaintiff does not need to periodically alternate sitting and standing to relieve pain or discomfort, while Dr. Wang opines that Plaintiff would need a job that allows for shifting positions. (AR 19, 531.) Because the functional limitations described by Dr. Wang go beyond those described by Drs. Guellich, Herman, and Pan, and ultimately relied on by the ALJ, there is a substantial likelihood that, if Dr. Wang's opinion were to be fully credited, the ALJ's decision may be materially altered. *See Harvey v. Colvin*, 2013 WL 3899282, at *4 (C.D. Cal. July 29, 2013) (finding that when an examining physician

assesses functional limitations beyond those specified in the medical opinions before the ALJ and beyond the limitations found by the ALJ, the case must be remanded).

The Commissioner's assertion that the date of the additional evidence diminishes the relevance of the evidence presented to the Appeals Council is unpersuasive. The fact that the records provided to the Appeals Council post-date the ALJ's decision does not on its own diminish the relevance of the documents in evaluating Plaintiff's disability claim. *See Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) ("it is clear that reports containing observations made after that period for disability are relevant to assess claimant's disability. It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis.") (internal citations omitted); *see also Staley v. Massanari*, 17 Fed. App'x 609, 610 (9th Cir. 2001) (finding that new evidence may not be discounted solely because it was sought out after an adverse ALJ decision). Here, the letter and function report prepared by Dr. Wang reference Plaintiff's treatment for multiple sclerosis and degenerative disc disease. (AR 18-20.) Both conditions were indisputably present during the period of disability and prior to the ALJ's decision. (*See* AR 24-37, 534-35, 792-93.) The additional records are relevant to assessing Plaintiff's disability claim. *See Vaile v. Berryhill*, No. 5:16-cv-00393-GJS, 2017 WL 2785331, at *3 (C.D. Cal. June 27, 2017) (finding that evidence that post-dates the ALJ's decision is relevant to assess disability when that evidence relates to treating conditions that existed during the disability period,). Thus, remand is appropriate to allow the ALJ the opportunity to consider the additional evidence provided to the Appeals Council.

Similarly, the Commissioner's contention that Dr. Wang's findings are undermined by Dr. McCloy's treatment note is unpersuasive. (Def's Mem. 4.) Dr. Wang has been treating Plaintiff since at least June 2, 2017. (*See* AR 18, 55.) Because the record shows that Dr. Wang saw Plaintiff more than once and prescribed medication for Plaintiff, Dr. Wang is a treating physician. *See Staley*, 17 F. App'x at

610 (finding that because physician has seen claimant more than once, ran tests, and prescribed medication, the physician was a treating physician). As a treating physician, Dr. Wang's opinion is entitled to greater weight than the opinion of a non-treating physician. *See Valentine*, 574 F.3d at 692. Dr. McCloy is also a treating physician. (*See* AR 15.) In his function report, Dr. Wang notes that Plaintiff has good and bad days. (AR 54-55.) Similarly, Plaintiff reported to Dr. McCloy that while she sometimes "feels quite good," the feeling can "change quickly and she will suddenly feel tired." (AR 15.) Dr. McCloy notes that Plaintiff's general appearance, respiratory exam, and cardiovascular exam are normal, but renders a diagnosis of multiple sclerosis, back pain, neutrophilic leukocytosis, and hypertension. (AR 16.) Dr. Wang, however, primarily focuses his assessment on the effect of the lesion in Plaintiff's cervical spinal found by the June 2017 MRI. (*See* AR 18-20, 54.) Whether Dr. McCloy's treatment note undermines Dr. Wang's assessment, or whether Dr. McCloy's notes outweigh the notes of Dr. Wang is not for this Court to decide, rather it is the ALJ's responsibility to resolve conflicts found in the medical evidence. *See Treichler*, 775 F.3d at 1098 ("[W]e leave it to the ALJ to determine credibility, resolve conflicts in testimony, and resolve ambiguities in the record."); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

### 6. Conclusion

In sum, because there is a substantial likelihood that the additional evidence provided to the Appeals Council would materially alter the ALJ's disability analysis, remand is warranted.

### C.    Remand for Further Administrative Proceedings

Because further administrative review could remedy the ALJ's errors, remand for further administrative proceedings, rather than an award of benefits, is warranted here. *See Brown-Hunter*, 806 F.3d at 495 (remanding for an award of benefits is appropriate in rare circumstances). Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to

provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* (citations omitted). Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

Here, remand for further administrative proceedings is appropriate. *See Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) (finding that where the ALJ has not had an opportunity to evaluate evidence, the appropriate remedy is remand). On remand, the ALJ shall consider the additional evidence presented to the Appeals Council in reassessing Plaintiff's RFC. The ALJ shall then proceed through step four and step five, if necessary, to determine what work, if any, Plaintiff is capable of performing.

## V.   **CONCLUSION**

IT IS ORDERED that Judgment shall be entered REVERSING and REMANDING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED:  December 23, 2019         _____/s/_____
                                  ROZELLA A. OLIVER
                                  UNITED STATES MAGISTRATE JUDGE

### NOTICE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**